COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-005-CV

 

 

IN THE
INTEREST OF A.O., A CHILD

 

 

                                              ------------

 

           FROM THE 325TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

                                          I.  INTRODUCTION








Appellant Owen O. appeals the trial court=s
judgment terminating his parental rights to his daughter, Amy.[2]  In five issues, Owen argues that the trial
court erred by finding that he failed to admit his paternity, that the trial
court abused its discretion by making a finding of termination based upon a
ground that was not pled or tried by consent, and that there is no evidence or
insufficient evidence to support the trial court=s family
code subsections 161.001(1)(D), (E), and (N) termination ground findings.  We will affirm.

                                    II.  FACTUAL BACKGROUND

Owen is Amy=s
biological father.  Leticia S. is Amy=s
mother.  Leticia is also the mother of
twins born in November 2001.  Owen is not
the father of the twins.

Owen and Leticia started dating in October 2004
and began living together a few months thereafter.[3]  Leticia was pregnant with Jackie at the
time.  Jackie tested positive for cocaine
when she was born.  Leticia relinquished
her rights to Jackie in February 2006, and Jackie was adopted in May 2007.[4]  Owen and Leticia never married.

In October 2005, when Leticia was pregnant with
A.O., Owen and Leticia had an argument during which Owen threatened to ignite a
pile of clothes that had been sprayed with lighter fluid.  As a result of this incident, in January
2006, Owen was placed on ten years=
deferred adjudication community supervision for the offense of attempted arson.








Amy was born in April 2006.  Leticia used cocaine after A.O. was
born.  Owen used marijuana, and he used
cocaine with Leticia.

Approximately one year after A.O.=s birth,
in April 2007, the trial court revoked Owen=s
community supervision on the grounds that he had tested positive for cocaine
and TCH, failed to attend and complete drug treatment, failed to report to his
community supervision officer, failed to timely notify his community
supervision officer of a change of address, and failed to make payments
associated with his community supervision. 
The trial court adjudicated Owen guilty of attempted arson and sentenced
him to four years= confinement.








In June 2007, about two months after the
revocation of Owen=s community supervision, Texas
Department of Family and Protective Services (ATDFPS@)
investigated a referral involving Leticia, the twins, and Amy, all of whom were
living together.  The investigator
visited Leticia=s apartment and observed that it
was in disarray, that it contained a lot of trash, that it had ashtrays full of
cigarettes and cigars, that there was a lot of smoke, and that there were
approximately ten empty gallon-sized liquor bottles on the living room
floor.  Leticia told the investigator
that she was being evicted from the apartment and that she would probably test
positive for marijuana if tested.  Later
that same month, after CPS received Leticia=s drug
test results, TDFPS removed all three of the children from Leticia=s care
and filed its petition for protection of children, for conservatorship, and for
termination in a suit affecting the parent-child relationship.

At the bench trial in November 2008, Owen
admitted using illegal drugs.  He
testified that his projected release date from prison is December 9, 2010, and
that he is eligible for parole December 8, 2008.  On December 18, 2008, the trial court signed
an order terminating the parental rights of Owen and Leticia to Amy.  The trial court found by clear and convincing
evidence that Owen knowingly placed or knowingly allowed Amy to remain in
conditions or surroundings that endangered her physical or emotional
well-being, that Owen engaged in conduct or knowingly placed Amy with persons
who engaged in conduct that endangered Amy=s
physical or emotional well-being, that Owen constructively abandoned Amy, that
Owen failed to admit his paternity, that Owen knowingly engaged in criminal
conduct that resulted in his conviction of an offense and confinement or
imprisonment and inability to care for Amy for not less than two years from the
date of the filing of the petition, and that termination of the parent-child
relationship between Owen and Amy is in Amy=s best
interest.  See Tex. Fam. Code Ann.
'' 161.001(1)(D),
(E), (N), (Q), (2), 161.002(b)(1) (Vernon 2008).  This appeal followed.








                       III.  BURDEN OF PROOF AND STANDARD
OF REVIEW

A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).








In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. ''
161.001, 161.206(a).  Evidence is clear
and convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ Id. ' 101.007
(Vernon 2008).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).








In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment.  Id.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  Id.

We must therefore consider all of the evidence,
not just that which favors the verdict.  Id.
 But we cannot weigh witness
credibility issues that depend on the appearance and demeanor of the witnesses,
for that is the factfinder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s
determinations as long as they are not unreasonable.  Id. at 573.








In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provisions of section
161.001(1) and, if challenged, that the termination of the parent-child relationship
would be in the best interest of the child. 
C.H., 89 S.W.3d at 28.  If,
in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction
in the truth of its finding, then the evidence is factually insufficient.  H.R.M., 209 S.W.3d at 108.

                 IV.  EVIDENTIARY SUFFICIENCY
OF ENDANGERMENT FINDINGS

In his fourth and fifth issues, Owen argues that there
was no evidence or insufficient evidence to support the trial court=s family
code subsections 161.001(1)(D) and (E) endangerment findings.








Endangerent means to expose to loss or injury, to
jeopardize.  In re J.T.G., 121
S.W.3d 117, 125 (Tex. App.CFort
Worth 2003, no pet.).  The trial court
may order termination of the parent-child relationship if it finds by clear and
convincing evidence that the parent has knowingly placed or knowingly allowed
the child to remain in conditions or surroundings that endanger the physical or
emotional well-being of the child.  Tex.
Fam. Code Ann. ' 161.001(1)(D).  Under subsection (D), it is necessary to
examine evidence related to the environment of the child to determine if the
environment was the source of endangerment to the child=s
physical or emotional well-being.  In
re D.T., 34 S.W.3d 625, 632 (Tex. App.CFort
Worth 2000, pet. denied).  Conduct of a
parent in the home can create an environment that endangers the physical and
emotional well-being of a child.  J.T.G.,
121 S.W.3d at 125.

The trial court may order termination of the
parent-child relationship if it finds by clear and convincing evidence that the
parent has engaged in conduct or knowingly placed the child with persons who
engaged in conduct that endangers the physical or emotional well-being of the
child.  Tex. Fam. Code Ann. ' 161.001(1)(E).  Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s
physical or emotional well-being was the direct result of the parent=s
conduct, including acts, omissions, and failures to act.  J.T.G., 121 S.W.3d at 125.  Termination under subsection (E) must be
based on more than a single act or omission; a voluntary, deliberate, and
conscious course of conduct by the parent is required.  Id.; D.T., 34 S.W.3d at 634.








As a general rule, conduct that subjects a child
to a life of uncertainty and instability endangers the child=s
physical and emotional well-being.  In
re S.D., 980 S.W.2d 758, 763 (Tex. App.CSan
Antonio 1998, pet. denied).  To support a
finding of endangerment, the parent=s
conduct does not necessarily have to be directed at the child, and the child is
not required to suffer injury.  Boyd,
727 S.W.2d at 533.  The specific danger
to the child=s well-being may be inferred
from parental misconduct alone, and to determine whether termination is
necessary, courts may look to parental conduct both before and after the child=s
birth.  Id.; In re D.M., 58
S.W.3d 801, 812B13 (Tex. App.CFort
Worth 2001, no pet.).  Also, a factfinder
may infer from past conduct endangering the well-being of the child that
similar conduct will recur if the child is returned to the parent.  In re M.M., No. 02-08-00029-CV, 2008
WL 5195353, at *6 (Tex. App.CFort
Worth Dec. 11, 2008, no pet.) (mem. op.).

Parental and caregiver illegal drug use supports
a conclusion that the children=s
surroundings endanger their physical or emotional well-being.  J.T.G., 121 S.W.3d at 125; S.D.,
980 S.W.2d at 763; M.M., 2008 WL 5195353, at *6 (stating that drug use
and its effect on a parent=s life
and that parent=s ability to parent may
establish an endangering course of conduct). 
Evidence of criminal conduct, convictions, and imprisonment prior to the
birth of a child will support a finding that a parent engaged in a course of
conduct that endangered the child=s
well-being.  J.T.G., 121 S.W.3d at
133.  While imprisonment alone does not
constitute a continuing course of conduct that endangers the physical or
emotional well-being of a child, it is a fact properly considered on the issue
of endangerment.  Boyd, 727 S.W.2d
at 533B34.








Because the evidence pertaining to subsections
161.001(1)(D) and (E) is interrelated, we conduct a consolidated review.  In re T.N.S., 230 S.W.3d 434, 439
(Tex. App.CSan Antonio 2007, no pet.); J.T.G.,
121 S.W.3d at 126.  The evidence
demonstrates that Owen used illegal drugs before going to prison.  Owen admitted to using cocaine with Leticia,
and his community supervision was revoked in part because he tested positive
for cocaine and THC.[5]  Although Owen=s
community supervision was revoked in part because he tested positive for
cocaine, he confirmed that his drug of choice at the time was marijuana.  Owen=s
community supervision was revoked in April 2007, approximately one year after
A.O. was born.  Thus, part of Owen=s
illegal drug use occurred after A.O.=s birth.

Owen knew that Leticia used illegal drugs, yet he
did not take steps to protect Amy from this endangering environment.  Specifically, Owen testified that Leticia
began using drugs again a few months after Jackie, who tested positive for
cocaine at birth, was born.  Owen agreed
that Amy was probably conceived sometime around July 2005 and that Leticia was
probably using drugs while she was pregnant with Amy.  Owen confirmed that Leticia continued to use
cocaine after Amy was born.  He also
testified that Leticia used marijuana.








The criminal conduct for which Owen was placed on
community supervision occurred while Leticia was pregnant with Amy.  Owen=s
community supervision was revoked, and his guilt for the offense of attempted
arson was adjudicated on the multiple grounds set forth in the judgment
adjudicating his guilt.  Owen testified
that he had been incarcerated for almost two years and that his projected
release date from prison is December 9, 2010. 
He agreed that it is not fair to Amy Afor her
to have to sit around in foster care for the next year or two years and wait
for [him] to get out of jail.@

Owen directs us to evidence that he participated
in Leticia=s prenatal care, that he was
present when Amy was born, that he worked steadily and supported the family,
and that he was a Agood dad.@  He also points out that Amy was a Ahealthy,
happy baby.@ 
Under the appropriate standards of review, however, this evidence does
not render the evidence legally or factually insufficient to support the trial
court=s
subsections 161.001(1)(D) and (E) findings.








In light of the above evidence, we hold that the
trial court was entitled to make its family code subsections 161.001(1)(D) and
(E) findings.  See J.T.G., 121
S.W.3d at 125; D.T., 34 S.W.3d at 632; S.D., 980 S.W.2d at 763; M.M.,
2008 WL 5195353, at *6.  Accordingly,
giving due deference to the trial court=s
findings, we hold that a reasonable trier of fact could have formed a firm
belief or conviction that Owen engaged in conduct and knowingly placed or
knowingly allowed Amy to remain in conditions that endangered her physical or
emotional well-being.  See Tex.
Fam. Code Ann. ' 161.001(1)(D), (E); J.P.B.,
180 S.W.3d at 573; C.H., 89 S.W.3d at 28.  We hold that the evidence is legally and
factually sufficient to support the trial court=s
environmental endangerment and course-of-conduct endangerment findings.  We overrule Owen=s fourth
and fifth issues.

Owen does not challenge the trial court=s
best-interest finding.  Because the
evidence is legally and factually sufficient to support one ground for
termination under section 161.001(1), we need not consider Owen=s first,
second, and third issues, which relate to the other termination grounds found
by the trial court.  See Tex. R.
App. P. 47.1.

                                          V.  CONCLUSION

Having overruled Owen=s fourth
and fifth issues, we affirm the trial court=s
judgment terminating the parent-child relationship between Owen and Amy.

 

BILL
MEIER

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and MEIER, JJ.

 

DELIVERED:  June 25, 2009











[1]See Tex. R. App. P. 47.4.





[2]Pursuant to Texas Rule of
Appellate Procedure 9.8(b)(2), we use aliases for the names of the children
identified in the opinion.





[3]According to Owen,
however, there were Aseparations@ because he and Leticia Ahad minor arguments.@





[4]There is no allegation or
evidence that Owen is Jackie=s father.





[5]The portion of the order
adjudicating Owen=s guilt that sets forth
the grounds for the revocation contains two Aparagraphs,@ or Acounts,@ that Owen tested positive for cocaine.