NO. 07-12-00449-CV
 
 IN THE COURT OF APPEALS
 
 FOR THE SEVENTH DISTRICT OF TEXAS
 
 AT AMARILLO
 
 PANEL B
 
--------------------------------------------------------------------------------
FEBRUARY 5, 2013
--------------------------------------------------------------------------------

 
 IN THE INTEREST OF J.E., A CHILD
--------------------------------------------------------------------------------

 
 FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;
 
 NO. 2011-558,288; HONORABLE KEVIN C. HART, JUDGE
--------------------------------------------------------------------------------

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION
 
 Vickie, appeals from the trial court's order terminating her parental rights to her son, J.E. Through one issue, she contends the evidence was insufficient to support the grounds on which termination was based and argues termination of her parental rights was not in J.E.'s best interest. We will affirm.
 Background
Vickie, 42 years old at the time of the final hearing in this case, is the mother of J.E., who was born in January 2011. At the time of final hearing, the child was nineteen months old. In July 2011, Lubbock police conducted a drug raid on a Lubbock home belonging to Vickie's mother. Vickie and J.E. were staying in the home and were present at the time of the raid. J.E. was removed from the home and placed in foster care. Vickie later plead guilty to possession of marijuana, less than 2 ounces, in a drug-free zone, a Class A misdemeanor. The Texas Department of Family and Protective Services filed its original petition that month. Foster parents, who have had care of J.E. since October 2011, also filed a petition in intervention, seeking termination of Vickie's parental rights.
The final hearing resulting in termination of Vickie's parental rights was held in August 2012. Termination was based on the court's findings Vickie had knowingly placed or knowingly allowed J.E. to remain in conditions or surroundings which endangered the child's physical or emotional well-being and Vickie had engaged in conduct or knowingly placed J.E. with persons who engaged in conduct which endangered his physical or emotional well-being. See Tex. Fam. Code Ann. § 161.001(1)(D), (E) (West 2012). It also found termination of Vickie's parental rights was in J.E.'s best interest. Tex. Fam. Code Ann. § 161.001(2) (West 2012). This appeal followed.
 Analysis
 In her sole issue on appeal, Vickie challenges the sufficiency of the evidence to support the grounds for termination and argues termination of her parental rights was not in J.E.'s best interest. 
 To support termination of parental rights under section 161.001 of the Family Code, the petitioner must establish that the parent engaged in conduct enumerated in one or more of the subsections of section 161.001(1) and must also show that termination of the parent-child relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (West 2012). The petitioner must prove both prongs and may not rely solely on a determination that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Only one predicate finding under section 161.001(1) is necessary to support termination when there is also a finding that termination is in the child's best interest. In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).
It is well established that parental rights are of constitutional dimension and are "far more precious than property rights." Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed. 2d 551 (1976)). Because of their great importance, termination of parental rights must be supported by clear and convincing evidence rather than a mere preponderance. Tex. Fam. Code Ann. § 161.001; In the Interest of C.H., 89 S.W.3d 17, 23 (Tex. 2002). Clear and convincing evidence is the degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegations sought to be proved. In the Interest of C.H., 89 S.W.3d at 25. This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979); In re D.T., 34 S.W.3d 625, 630 (Tex.App. -- Fort Worth 2000, pet. denied). While the proof must be more than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. Addington, 588 S.W.2d at 570. Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. Holick, 685 S.W.2d at 20-21.
When reviewing the legal sufficiency of the evidence in a case involving termination of parental rights, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that there exist grounds for termination under § 161.001(1) and that termination is in the best interest of the children. See Tex. Fam. Code Ann. § 161.001(1), (2); In the Interest of J.P.B., 180 S.W.3d 570, 573 (Tex. 2005) (quoting In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002)). In doing so, we examine all evidence in the light most favorable to the finding, assuming that the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." In re J.F.C., 96 S.W.3d at 266. We must also disregard all evidence that the factfinder could have reasonably disbelieved or found to be incredible. Id. However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." Id.
When conducting a factual sufficiency review of the evidence supporting termination, we examine the entire record to determine whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" as to the challenged finding. See Tex. Fam. Code Ann. § 161.001; In re J.F.C., 96 S.W.3d at 266. If the evidence that could not be credited in favor of the finding is so great that it would prevent a reasonable factfinder from forming a firm belief or conviction that either of the statutory requirements has been met, the evidence will be factually insufficient and the termination will be reversed. Id.
Grounds
§ 161.001(1)(E)
Parental rights may be terminated under section 161.001(1)(E) if evidence shows that a parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. The cause of the danger to the child must be the parent's conduct alone, which may be evidenced by the parent's actions or the parent's omission or failure to act. Doyle v. Tex. Dep't of Protective & Regulatory Servs., 16 S.W.3d 390, 395 (Tex.App. -- El Paso 2000, pet. denied). Additionally, subsection (E) requires more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. In re D.T., 34 S.W.3d at 634. 
In the termination context, "endanger" means to expose to loss or injury; to jeopardize. Boyd, 727 S.W.2d at 533. While proof of endangering conduct requires more than a demonstration of "possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." Id. A parent's use of illegal drugs and their effect on her ability to parent may qualify as an endangering course of conduct. In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009). The endangering course of conduct may include the parent's actions before the child's birth, and conduct while the parent had custody of older children. Id.; see In re M.N.G., 147 S.W.3d 521, 536 (Tex.App. -- Fort Worth 2004, pet. denied) (courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Additionally, as a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. In re R.W., 129 S.W.3d 732, 739 (Tex.App. -- Fort Worth 2004, pet. denied); In re S.D., 980 S.W.2d 758, 763 (Tex.App. -- San Antonio 1998, pet. denied).
Discussion
 Although the record does not demonstrate Vickie directed endangering conduct toward J.E., from review of the evidence the trial court heard, we nonetheless conclude without difficulty that the evidence permitted the court reasonably to form a firm belief or conviction she engaged in a course of conduct which endangered his physical or emotional well-being. Analysis of that evidence begins with Vickie's significant admission at trial that she used methamphetamines, both during her pregnancy with J.E. and while pregnant with his older sister, born in 2009. She acknowledged that she endangered J.E. during her pregnancy, testifying she tested positive for methamphetamine when she was five months pregnant with J.E. Vickie told the court she was unaware she was pregnant at that time, but our review of the evidentiary sufficiency must recognize the court was not obligated to believe all her testimony. See J.F.C., 96 S.W.3d at 266 (in legal sufficiency analysis, reviewing court disregards evidence that reasonable factfinder "could have disbelieved").
 We next note the evidence showed Vickie's continued contact with illegal drugs after J.E.'s birth. As noted, she plead guilty to possession of marijuana after the drug raid that led to J.E.'s removal. She admitted she knowingly allowed drug users to be around J.E., including her own adult daughter, Raven, who also was arrested at the time of the drug raid. Raven testified at trial, agreeing that Vickie allowed her to "be dangerous" around the children. Raven also testified there was marijuana in a foil pipe on a nightstand in the bedroom where Vickie and J.E. slept. Raven testified she left it there. 
As noted, Vickie was 42 at the time of trial. She has a long history of drug abuse, rehabilitation and relapse. Vickie testified she first began using drugs when she was eighteen years old. She sold drugs before she had children and said her longest period of sobriety was about ten years when her three oldest children were young. Vickie reported that she started using drugs "real bad" in 2003 when she was divorced. She had a Department service plan after Raven's removal in 2007. But evidence showed her drug use continued despite the birth of another child in 2009. A psychologist who had evaluated Vickie testified Vickie admitted that she both smoked marijuana and used methamphetamine "three to four times a week" until late 2010. She also admitted to the psychologist that she was "not actively working her recovery," did not have an AA sponsor, and was not attending meetings. He told the court that while Vickie had not used drugs and alcohol for about a year, she "still wasn't actively doing the things" that he considered necessary to prevent a relapse.
The trial court reasonably could have considered Vickie's volatile relationship with J.E.'s father in its evaluation of her endangering conduct. Vickie testified she told the psychologist J.E.'s father "abused multiple drugs including cocaine and methamphetamines, [and] had been physically abusive to her on multiple occasions."
There was undisputed evidence that Vickie had refrained from drug use for about a year, was gainfully employed and planned to apply for Medicare and food stamps, had an apartment with a room for J.E., and had appropriate clothing and food for J.E. However, a trial court is not required to consider conduct shortly before trial as negating evidence of a long pattern of endangering conduct. In the Interest of R.W., 129 S.W.3d at 741; see In re J.O.A., 283 S.W.3d at 346 ("evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"). 
Vickie's pattern of drug use and involvement with drug users, including her admitted methamphetamine use while pregnant, permitted the trial court to form a firm belief or conviction that she engaged in conduct endangering J.E.'s physical or emotional well-being. In re J.O.A., 283 S.W.3d at 345. The evidence is legally sufficient.
Likewise, the evidence of Vickie's improved lifestyle was not so significant as to make unreasonable the trial court's firm belief or conviction that Vickie engaged in endangering conduct. See In re J.F.C., 96 S.W.3d at 266 (stating factual sufficiency standard). The evidence is also factually sufficient.

Best Interest
 Vickie also challenges the legal and factual sufficiency of the trial court's finding, pursuant to section 161.001(2), that termination was in her child's best interest. See Tex. Fam. Code Ann. § 161.001(2) (West 2012).
A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship. In the Interest of L.M., 104 S.W.3d 642, 647 (Tex. App. -- Houston [1st Dist.] 2003, no pet.). The Department has the burden to prove by clear and convincing evidence that termination is in the child's best interest. In re J.L., 163 S.W.3d 79, 84 (Tex. 2005); In re A.V., 113 S.W.3d at 362. The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interests of the chiId. In the Interest of C.H., 89 S.W.3d at 28; In the Interest of L.M., 104 S.W.3d at 647. In Holley v. Adams, the Texas Supreme Court provided a nonexclusive list of factors that the trier of fact in a termination case may use in determining the best interest of the chiId. Holley, 544 S.W.2d at 371-72. These factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. Id. These factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to parental termination. In the Interest of C.H., 89 S.W.3d at 27; Adams v. Tex. Dep't of Family & Protective Servs., 236 S.W.3d 271, 280 (Tex.App. -- Houston [1st Dist.] 2007, no pet.). 
J.E. had lived with the intervenor foster parents for ten of his nineteen months by the time of the final hearing. The caseworker testified that J.E. is "doing very well." The foster mother testified to the foster parents' love for the child, his close bonds with the foster parents and their extended family, and their desire to "raise him up as our own." Both foster parents testified they want to adopt J.E. The court heard no evidence casting doubt on the ability or desire of the foster parents to meet J.E.'s emotional and physical needs, now or in the future.
The court heard conflicting evidence regarding Vickie's ability to meet her child's needs. Vickie testified to her recent, more stable work history. She testified she planned for J.E. to live at her apartment, where he would have his own bedroom. She agreed she would have appropriate clothing and food for J.E. and testified that she would seek Medicaid and food stamps to provide for him. She said she would comply with any court-ordered service. She testified she also plans to apply for another job to supplement her income. She stated she intends to find a church daycare to care for J.E. while she is at work. Vickie testified she had a friend from church, a co-worker, and an aunt to help her.
But the record indicates also Vickie had continuing problems with stability and employment. Vickie's child born in 2009 does not live with her. Although they testified Raven was going to move elsewhere, at the time of trial Vickie continued to live with Raven, who is a drug user and has an open Department case regarding her own son. 
Vickie admitted she was unable to place and enforce limits on her children, particularly Raven. Vickie's individual therapist testified Vickie could not provide a safe and nurturing environment for J.E. She recommended termination of Vickie's parental rights. As noted, the evaluating psychologist told the court Vickie was not taking the actions he considered necessary for her to maintain sobriety. 
Viewing the evidence under the applicable standard, we conclude the evidence was both legally and factually sufficient to support the finding that termination of Vickie's parental rights is in the best interest of J.E.
 Conclusion
Having determined that legally and factually sufficient evidence supported a statutory ground for termination of Vickie's parental rights and a conclusion termination is in J.E.'s best interest, we overrule Vickie's sole issue on appeal and affirm the judgment of the trial court.

 James T. Campbell
 Justice