

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00808-CV

**IN THE INTEREST OF S.L.S.**, S.S., S.L.S., Children

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2012-CVL-000402-D4
Honorable H. Paul Canales, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  June 1, 2016

AFFIRMED

Christopher S. appeals the trial court's termination of his parental rights to S.L.S. (born in March 2004), S.S. (born in March 2005), and S.L. (born in September 2006). Christopher argues (1) the trial court erred by excluding Christopher from participating at trial; (2) the trial court erred by finding his incarceration to be a ground for termination because the Department did not plead that ground; (3) there is legally and factually insufficient evidence that he endangered the children; and (4) there is legally and factually insufficient evidence that termination of his parental rights is in the children's best interest.[2] We affirm the trial court's judgment.

---

[1] Sitting by assignment.
[2] Christopher's brief notes the trial court failed to timely commence the trial on the merits under Texas Family Code section 263.401. TEX. FAM. CODE ANN. § 263.401 (West Supp. 2015). Christopher does not raise this as an issue or point for review and failed to make a timely motion for dismissal based on the trial court's failure to timely commence trial. *See id.* § 263.402 (West 2014) (providing complaint about untimely commencement of trial is waived if no motion to dismiss is made); TEX. R. APP. P. 38.1(f).

**BACKGROUND**

The Department of Family and Protective Services filed a petition for conservatorship and to terminate Christopher's parental rights[3] to the three children. At a bench trial, Department investigators Elia Garcia, Jose Enrique Gonzalez, and Miriam Aco testified, as did the children's therapist Belen Cantu, the children's foster mother Julia, and the children's paternal grandmother Sigrid. The trial court also admitted a certified copy of Christopher's convictions from the State of Hawaii. Because Christopher was incarcerated during the trial, he participated by telephone. The trial court disconnected the telephone line during trial "because [Christopher] was disrupting the hearing."

The trial court signed an order terminating Christopher's parental rights to the children and appointed the Department permanent managing conservator. The trial court found by clear and convincing evidence that termination of Christopher's parental rights is in the children's best interest, Christopher endangered the children's well-being, and Christopher knowingly engaged in criminal conduct resulting in his conviction, imprisonment, and inability to care for the children for at least two years. Christopher appeals.

**NOT ALLOWING CHRISTOPHER TO PARTICIPATE AT TRIAL**

Christopher argues the trial court erred by not allowing him to participate at trial. Christopher was represented by counsel at trial, and Christopher appeared by telephone. At the beginning of the proceeding, the trial court admonished Christopher that if he interrupted the hearing, he would not be allowed to participate. The trial court warned Christopher again several minutes later. The trial court subsequently found Christopher was disrupting the hearing, and the judge stated he was severing the telephone connection. Christopher responded, "Okay."

---

[3] The Department also requested termination of the parental rights of the children's mother, who filed an affidavit of relinquishment and who has not appealed the trial court's judgment.

Christopher's attorney did not object and he continued to represent Christopher through the rest of trial. To preserve a complaint for appellate review, a party must make a timely and specific objection. *In re D.W.*, No. 04-05-00927-CV, 2006 WL 2263907, at *1 (Tex. App.—San Antonio Aug. 9, 2006, no pet.) (mem. op.) (citing TEX. R. APP. P. 33.1). Because Christopher's attorney did not object to the trial court's ruling not to allow Christopher to further participate at trial because he was disruptive, the complaint has not been preserved for appellate review. *See id.*

## TERMINATION OF CHRISTOPHER'S PARENTAL RIGHTS

A trial court may order termination of the parent-child relationship if the trial court finds by clear and convincing evidence at least one of the statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015). A judgment terminating parental rights must be supported by clear and convincing evidence. *Id.* § 161.001(b), (c). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found

incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.*

When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.* Christopher challenges both of the trial court's findings of the grounds for terminating his parental rights and the best-interest finding.

## A. Endangerment Ground

The trial court found Christopher engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Direct physical abuse may clearly endanger a child under subsection (E). *In re I.J.A.*, No. 04-09-00787-CV, 2010 WL 2403728, at *3 (Tex. App.—San Antonio June 16, 2010, no pet.) (mem. op.). Routinely subjecting a child to the probability that she will be left alone because her parent is in jail, can also endanger a child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). "Termination [for endangerment] must be based on not just a single act or omission, but a voluntary, deliberate, and conscious course of conduct by the parent." *In re E.A.G.*, 373 S.W.3d 129, 142 (Tex. App.—San Antonio 2012, pet. denied).

Investigator Garcia testified she received a call about the children because they were in the custody of U.S. Customs and Border Protection. Christopher, who had traveled to Mexico with the children, had been arrested upon his re-entry into the United States based on an outstanding

warrant. The certified copy of Christopher's convictions shows he is serving a twenty-year sentence in Hawaii for first degree promotion of a harmful drug and has another conviction for contempt of court. The children's grandmother Sigrid testified the drug charge was for "possession and trafficking" of anabolic steroids.

Investigator Aco testified she interviewed the children after they were removed from the care of U.S. Customs and Border Protection. S.L.S. told Aco that Christopher physically abused him, hit him with a closed fist, and "it was to the point that blood was coming out of his ear." S.L.S. also mentioned to Aco that Christopher "grabbed him by the neck and pulled him over." Aco testified S.S. told her Christopher would hit her with a belt on her head and "blood came out," and Christopher's friend "tried to touch her inappropriately in her private parts on top and under the clothes." Aco stated S.S. specifically referred to her vaginal area. Aco testified S.L. told her that Christopher "was aggressive, even though they would not provoke him," and he used to hit them with a belt. Cantu, the children's therapist, testified S.L.S. told her that Christopher once lost his wallet, blamed S.L.S., and started choking S.L.S. S.LS. also told Cantu that Christopher would hit them "with things" and choke them. S.S. informed Cantu that Christopher "hit her on the head and started bleeding. So then [Christopher] got scared and took [S.S.] into the shower and she just saw blood dripping in the shower."

The trial court could have reasonably formed a firm belief or conviction that Christopher engaged in a voluntary, deliberate, and conscious course of conduct that endangered the children's physical or emotional well-being. We therefore hold the evidence is legally and factually sufficient to support the trial court's finding of the endangerment ground of termination and need not address Christopher's issue that the Department failed to plead the incarceration ground. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (noting a finding of only one ground for termination is sufficient

to support a judgment of termination when there is also a finding that termination is in the child's best interest).

**B. Best Interest**

Christopher argues there is legally and factually insufficient evidence that termination of his parental rights is in the children's best interest. The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*, 401 S.W.3d at 684 (internal citation omitted).

In addition to the evidence that Christopher endangered the children's well-being, there was other evidence of *Holley* factors supporting the trial court's best-interest finding. Although Cantu testified the children told her they loved their father, Cantu testified the children told her they were scared of him and did not want to live with him. Julia, the children's foster mother, also testified the children were afraid of Christopher. Sigrid testified she received two letters from S.L.S. and S.S. stating "they wanted to stay with their foster mom because she took very good care of them and they loved her."

Cantu testified that when the children (who were ages five, six, and seven) first started therapy, they were unable to read or write. Investigator Garcia testified Christopher had not enrolled the children in school, but after the children were placed with their foster mother, Julia, the children learned how to read and were doing well in school. Julia testified she "had a very hard time" with the children because "[t]hey had no structure . . . . [T]hey fought a lot, argued a lot, physically fighting with each other." She testified that for the first three months, the children would all sleep in S.L.S.'s bed "and they were all like sleeping in a corner. I couldn't tell whose leg was whose because they were like in a little ball."

Investigators Gonzalez and Garcia testified Christopher would not provide the Department with the names of any relatives for placement of the children. Christopher told Gonzalez he did not like his family and thought they had "too many personal problems of their own." He also would not give the Department his home address and instead told Garcia that he travelled throughout the U.S., from Illinois to Colorado to Hawaii. Gonzalez also testified Christopher would not provide specific information about where he and the children had lived because it might be used against him in his criminal case. Garcia testified the children also "didn't give me any further names of family" and did not know where their mother was. Aco testified the children "were unable to tell us exactly where they were living" and S.L.S. told her "they were living from hotel to hotel" and

"basically did not have a stable life." We hold the trial court could have reasonably formed a firm belief or conviction that termination of Christopher's parental rights is in the children's best interest.

## CONCLUSION

The trial court's judgment is affirmed.

Luz Elena D. Chapa, Justice