

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00429-CV

**IN THE INTEREST OF J.L.R.** and **P.J.R.**, Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01929
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Rebeca C. Martinez, Chief Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2024

AFFIRMED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant B.R.T. ("Mother"), the biological mother of J.L.R. and P.J.R.[1] In Mother's sole issue, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of J.L.R. and P.J.R. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We affirm.

---

[1] We refer to the children and parents by pseudonyms in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

**I. BACKGROUND**

In December 2022, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate parental rights regarding N.S.J., L.J.A., J.L.R., and P.J.R. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as the children's temporary sole managing conservator. J.L.R. and P.J.R. were placed in a "foster-to-adopt home." In a status hearing order, the trial court found that Mother had reviewed, signed, and understood a service plan.

The Department's request to terminate the parent-child relationship as to Mother proceeded to a bench trial. At the May 28, 2024 trial, the trial court considered the testimony of: (1) Monica Hernandez, a Department caseworker, and (2) Mother.

After the trial, the trial court signed an order stating that the trial court found by clear and convincing evidence that Mother: (1) failed to comply with specific provisions of a court order (subsection (1)(O) failure to comply with court order) and (2) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and failed to complete a court-ordered substance abuse treatment program, or after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance (subsection (1)(P) use of controlled substance). *Id*. §§ 161.001(b)(1) (O), (P). The order further provides that termination of the parent-child relationship between Mother and J.L.R., who was five years old at the time of trial, and P.J.R., who was four years old at the time of trial, was in each child's best interest (subsection (1)(2) best interest). *Id*. § 161.001(b)(2).[2]

---

[2] The order designates S.R. as the "alleged father" of J.LR. and P.J.R. and states that "the parent-child relationship, if any exists or could exist, between [S.R.] and [J.L.R.] and [P.J.R.], a child [sic] the subject of this suit, is terminated." S.R. does not appeal, and he is not a party to this appeal. Additionally, the order does not terminate Mother's parental rights to N.S.J. and L.J.A. Accordingly, N.S.J. and L.J.A. are not children subject to this appeal.

Mother timely appeals.

## II. DISCUSSION

### A.    Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2).  Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002).  In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266.  "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*.  In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

### B.    Law on Best Interest

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266.  In a best interest analysis, we apply the non-

exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3]  The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).  Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b).  Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).  Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*.  In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

## C.    Best Interest Evidence & Analysis

Hernandez testified that the children's removal was prompted when J.L.R. and P.J.R. were found at 3:00 a.m. wandering the street in their diapers.  Mother was at home asleep.  Hernandez

---

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

contended Mother's lack of supervision during this incident endangered J.L.R. and P.J.R. Hernandez testified that the trial court ordered Mother to complete, among other things, a drug assessment, a drug treatment program, and submit to random drug testing. Over the course of the pending termination proceeding, Mother, according to Hernandez, tested positive for drugs during her participation in two drug treatment programs. Furthermore, Mother had not completed a third drug treatment program. On April 4, 2024, approximately six weeks before trial, both Mother's hair follicle and urine analysis drug tests were positive, according to Hernandez. Hernandez characterized the levels of Mother's hair follicle test results as "very concerning" because the results increased over time. Hernandez recalled that Mother insinuated that her boyfriend ("Boyfriend") was responsible for her positive drug test results, asking whether sexual intercourse with a "user" could result in a positive drug test. The Department, according to Hernandez, was concerned that Mother's relationship with a drug user would make it "easier for her to fall into the same drug usage." Hernandez also testified that J.L.R. and P.J.R. had been diagnosed with autism spectrum disorder and that both require speech, occupational, and physical therapy. Hernandez further testified that J.L.R. had been accepted for "ABA therapy."

Mother testified that she had not used drugs since August 2023. Mother claimed that she was not able to complete the third drug treatment program because she missed two classes. Mother further testified that she had dated Boyfriend for approximately a year before trial. About a month before trial, Boyfriend told Mother that he had used drugs, and Mother ended her relationship with Boyfriend because of his drug use. Mother works at a bar from 6:45 p.m. to 3:00 a.m. However, Mother identified an adult who was willing to babysit the children while Mother worked. When asked what Mother knew about J.L.R.'s and P.J.R.'s special needs related to their diagnosis of autism, she answered "I kind of just been learning as I go, because I've never had to deal with

autism." Mother had not asked for any help from the Department or done anything on her own to learn about caring for children with autism.

Mother's illicit drug use is relevant to multiple *Holley* factors, including J.L.R.'s and P.J.R.'s emotional and physical needs now and in the future (the second factor), the emotional and physical danger to J.L.R. and P.J.R. now and in the future (the third factor), Mother's parental abilities (the fourth factor), the stability of Mother's home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

The trial court may have found that the speech, occupational, and physical therapy necessitated by J.L.R.'s and P.J.R.'s autism constitutes special needs of the children. Moreover, Mother admitted that she had "kind of just been learning as [she went]" and had not done anything on her own to learn how to care for a child with autism. In *In re S.D.*, 980 S.W.2d 758, 764 (Tex. App.—San Antonio 1998, pet. denied), a physician "and other witnesses testified about the parents' inability to meet the[] special needs [of their children] and to provide their children a proper home environment." Mother's testimony may have allowed the trial court to reasonably form a firm belief or conviction that Mother lacked sufficient initiative to proactively learn about J.L.R.'s and P.J.R.'s special needs. *See id.* (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs" resulting from prenatal drug exposure). This finding implicates J.L.R.'s and P.J.R.'s emotional and physical needs now and in the future (the second factor). *Id.*; *see also Holley*, 544 S.W.2d at 372.

**D.      Best Interest Disposition**

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in J.L.R.'s and P.J.R.'s best interest.  *See In re J.F.C.*, 96 S.W.3d at 266.  The second (a child's emotional and physical needs now and in the future), third (emotional and physical danger to a child now and in the future), fourth (parental abilities of the individuals seeking custody), seventh (stability of the home or proposed placement), and eighth (parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors weigh in favor of termination.  *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety.").  We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in J.L.R.'s and P.J.R.'s best interest.  *See In re J.F.C.*, 96 S.W.3d at 266.  Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  Mother's sole issue is overruled.

### III. CONCLUSION

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice