

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00365-CV

In the **INTEREST of A.L.**, D.R.L., and N.S.L.

From the 218th Judicial District Court, Wilson County, Texas
Trial Court No. 12-10-0594-CVW
Honorable Thomas F. Lee, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  October 15, 2014

AFFIRMED

The trial court terminated Joseph L.'s parent-child relationship with the children A.L., D.R.L., and N.S.L.[1] after a bench trial.  Joseph appeals, arguing the evidence is insufficient to support the trial court's findings of statutory grounds for the termination.  We affirm the trial court's order.

A trial court may terminate the parent-child relationship only if it finds by clear and convincing evidence one of the statutory grounds for termination and that termination is in the child's best interest.  TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014).  Here, the trial court found the following statutory grounds for terminating Joseph's rights:

---

[1] To protect the identity of the minor children, we refer to them by their initials and to appellant and the children's mother by their first names only.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8.

- Joseph knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, *see id.* § 161.001(1)(D);

- Joseph engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, *see id.* § 161.001(1)(E); and

- Joseph failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children who had been in the temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent for the abuse or neglect of the children, *see id.* § 161.001(1)(O).

Joseph challenges the legal and factual sufficiency of the evidence to support each of these findings, but he does not challenge the trial court's finding that termination of his parental rights is in the best interest of the children. We will affirm the trial court's order if the evidence sufficiently supports any one of the statutory grounds found by the trial court. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.). The evidence is sufficient if, in light of all the evidence, a reasonable factfinder could have formed a firm belief or conviction that its findings were true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

The Department contends the trial court's findings of endangerment under sections 161.001(1)(D) and (E) are supported by evidence of Joseph's failure to take steps to protect the children, lack of parental involvement, domestic violence, and drug use. As used in sections 161.001(1)(D) and (E), "'endanger' means to expose to loss or injury or to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* Endangering conduct may include omissions or failures to act as well as

affirmative acts. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied). Generally, conduct that subjects a child to a life of uncertainty and instability, endangers the child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Also, evidence that the parent is aware the child's surroundings or the parent's conduct pose a potential for danger and disregards the risk can support a finding of endangerment. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

A.L., D.R.L., and their mother, Sophie, lived with Joseph and his mother for about one year, until August 2012, when Sophie and the children moved out after an argument with Joseph's mother. At that time, A.L. was two years old, D.R.L. was nine months old, and Sophie was approximately six months pregnant. Sophie and the children moved into Sophie's grandmother's house. Joseph testified he believed Sophie had mental health problems that caused her to have severe mood swings, "pick fights," and "throw things," all of which he had seen her do in front of the children. Joseph attempted to visit the children one time after Sophie moved out of his house. Both he and Sophie testified that she would not allow him to enter her grandmother's house and he did not see the children.

In October 2012, two months after Sophie moved into her grandmother's house, police were called by a neighbor who was concerned about a child's safety. The neighbor told the police that the eleven-month-old child had wandered into her yard and remained there for about twenty minutes without any parental supervision. The officer testified he spoke with Sophie and checked on the children. He testified the children were very dirty and he could see trash all over the floor inside the home. He notified the Department of Family and Protective Services, which sent an investigator to the home. The investigator testified the conditions of the home were "deplorable." The floor was littered with trash and dirty clothes and the house smelled like rotten eggs. She saw A.L. putting a screwdriver in her mouth, and saw D.R.L. playing with a metal clothes hanger and

putting it in his mouth. The children were also playing with a can of wasp spray. The investigator testified the children were dirty, wearing dirty diapers, and had skin rashes. The Department filed for and was granted temporary custody, and the children were placed in foster care. The Department was granted custody of N.L. when he was born a month later.

Joseph did not have any contact with the children from August 2012 until after he was served in April 2013. Although he testified he "was concerned" about where the children were living, who they were living with, and about the effect Sophie's mental health problems could be having on the children, Joseph only tried to see the children one time. He did not see inside the house, find out who was living there, or take any steps to make sure the children were in safe surroundings. He testified that he did not have further contact because he lost Sophie's telephone number and could not reach her relatives on the telephone. He did not do anything further to try to find his children or provide them support. As of the date of trial, Joseph had not paid any child support.

Although Joseph was served with citation in this case in April 2013, the record contains no evidence that Joseph had any visits with the children before December 2013, more than a year after they moved out of his home. A licensed professional counselor testified she was asked by the Department to observe Joseph's interactions with the children during weekly one-hour visits for three months beginning in December 2013. Joseph had three visits with the children. He appeared for visits on two other occasions when the children's caregiver did not bring them. Joseph missed four visits because of transportation problems and work conflicts. The counselor testified she did not observe any abusive or neglectful behavior, but that Joseph did not know how to interact with the children. She testified that Joseph did not appear to have any bond with the two younger children.

A parent's lack of contact with a child without any excuse and failure to take steps to ensure the child's safety are evidence of endangerment. *See In re V.V.*, 349 S.W.3d 548, 553-54 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (en banc); *see also S.M.L.*, 31 S.W.3d at 350 (endangerment occurs when parent is aware that child's condition or surroundings pose a potential for danger but disregards the risk). A parent's lack of significant contact with or support of a child can also subject the child to a life of uncertainty and instability that endangers the child's physical and emotional well-being. *See In re A.J.D.*, No. 02-13-00183-CV, 2013 WL 5781478, at *4 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.); *In re B.A.*, No. 14-00-00047-CV, 2001 WL 578314, at *2 (Tex. App.—Houston [14th Dist.] May 31, 2001, no pet.) (Not designated for publication). Joseph failed to take steps to protect his children when he knew they were at risk in their mother's care. He did nothing to provide them any physical, monetary, or emotional support after they left his home. He had no significant contact with them for over a year and attended only three therapeutic visits while the case was pending, during which his lack of bonding with the two younger children was apparent to the counselor. This evidence supports the trial court's endangerment findings.

When Sophie was first interviewed, she told the Department investigator that there had been domestic violence in her relationship with Joseph. At trial, she testified that Joseph hit her one time when she was six or seven months pregnant. Joseph did not dispute the testimony. Violence in a home is part of the "conditions or surroundings" of a child living in that home. *In re C.L.C.*, 119 S.W.3d 382, 392-93 (Tex. App.—Tyler 2003, no pet.). Abusive or violent conduct by a parent or other resident of a child's home can constitute a condition that endangers the child's physical or emotional well-being within the meaning of section 161.001(1)(D). *Id.*; *In re I.G.*, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.). Violent conduct directed at the other parent is evidence of endangerment under section 161.001(1)(E), even if not committed in the child's

presence. *Dir. of Dallas Cnty. Child Protective Servs. Unit v. Bowling*, 833 S.W.2d 733-34 (Tex. App.—Dallas 1992, no writ).

Sophie also testified she had seen Joseph use methamphetamines, "weed," and crack while they lived together; however, she had not seen him use drugs in front of the children. Joseph admitted he used drugs in the past, but claimed he had not used drugs for ten years and had never done so in Sophie's or the children's presence. It was for the trial court, as the sole judge of the credibility of the witnesses, to resolve this disputed testimony. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). Joseph was required to submit to random drug tests as part of his family service plan. The Department caseworker testified that Joseph tested positive for amphetamines and methamphetamines in a random "instant drug test" she administered. She testified she sent Joseph to the Texas Med Clinic for a confirming test, but that he did not follow through. Joseph testified that he believed the instant test had been "botched." He also testified that he went to the Texas Med Clinic when told to, but the Clinic would not perform the test because it had not received any paperwork from the Department. He testified he waited for four or five hours and then left because a family emergency arose. It is undisputed that Joseph did not return to have the test performed.

On appeal, Joseph complains about the reliability of the random test and the lack of evidence regarding the kind of test performed, the qualifications of the caseworker to collect the specimen, whether the results were confirmed, and the qualifications of the witness to give an opinion about the results. However, Joseph did not object on any of these grounds at trial. His only objection at trial was that the testimony about the results was hearsay because the witness "was not the caseworker at the time." After the State adduced testimony that the witness was the caseworker who administered the test, the trial court overruled the objection. Joseph did not

preserve his complaints about the reliability of the evidence or the qualifications of the witness for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003).

The trial court was free to believe Sophie's testimony about Joseph's drug use while she and the children lived with him and to disbelieve Joseph's. The court also reasonably could have inferred from Joseph's failure to submit to a test at the Texas Med Clinic that he was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). Thus, even if we were to discount the result of the instant drug test, there is evidence a reasonable trial court could have credited that Joseph engaged in drug use both while the children lived in his home and while this case was pending. Illegal drug use by a parent endangers a child's physical and emotional well-being and supports termination of the parent's rights under sections 161.001(1)(D) and (E). *See In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied); *In re C.L.C.*, 119 S.W.3d at 398; *In re S.D.*, 980 S.W.2d at 763.

The record contains evidence that Joseph failed to take steps to ensure the children's safety, did not have any involvement or significant contact with the children for an extended period of time, failed to support the children, used illegal drugs, and engaged in domestic violence. Having reviewed all the evidence, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Joseph endangered the children and that its findings under sections 161.001(1)(D) and (E) were true. The evidence is therefore legally and factually sufficient to support the grounds for termination. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25. We affirm the trial court's order terminating Joseph's parental rights.

Luz Elena D. Chapa, Justice