

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00099-CV

**IN THE INTEREST OF Z.M.M.**, a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA00639
Honorable Richard Garcia, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: October 2, 2019

AFFIRMED

We consider this parental termination case upon remand from the Texas Supreme Court. *See In re Z.M.M.*, 577 S.W.3d 541 (Tex. 2019) (per curiam). Parental rights may be terminated only upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)–(2). In our prior opinion, we considered only one predicate ground for termination under section 161.001(b)(1) when the appellant father ("Father") contested three grounds. We now consider as grounds for termination the statutory predicate under section 161.001(b)(1)(O), as we had in our prior opinion, and the predicate under section 161.001(b)(1)(D), as the supreme court specifically instructed us to do. We also consider the merits of section 161.001(d), as instructed, which alters our prior analysis

under 161.001(b)(1)(O). We hold the evidence is legally insufficient to support the predicate finding under section 161.001(b)(1)(D), but the evidence is legally and factually sufficient to support the trial court's determination under section 161.001(b)(1)(O). We also hold, as we did in our prior opinion, that the evidence is legally and factually sufficient to support the trial court's finding that termination is in the best interest of the child, Z.M.M. We affirm the trial court's judgment.

### BACKGROUND

On March 28, 2017, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate Father's parental rights to Z.M.M., who was one year old at the time. A bench trial was conducted on February 12, 2018. Department caseworker Eletheia Hill testified that Z.M.M. lived with his mother prior to his removal and that the Department removed Z.M.M. based on a referral alleging drug use in the home. According to Hill, Z.M.M.'s mother admitted to using methamphetamines and marijuana. Hill also testified that Father claimed to know that Z.M.M.'s mother was "using something" but that he took no action because the mother kept Father away from Z.M.M.

On May 16, 2017, the trial court ordered Father's compliance with a family service plan. This plan required Father to participate in a parenting class; obtain and submit proof of housing; remain drug and alcohol free; and complete a drug and alcohol assessment, as well as any recommended treatments following the assessment. Hill testified that Father completed his parenting class and his assessment but did not complete recommended outpatient treatment for mild marijuana addiction. Hill also testified that Father told her he recently obtained housing, but that because Father would not give her his address, she had been unable to confirm where he was living. According to Hill, when she asked Father why he was not completing the conditions of his service plan, Father claimed that he did not want to take time off work and that he did not have

transportation. Hill testified that the Department offered Father transportation and extra time to complete his service plan.

Hill believed it was in Z.M.M.'s best interest for Father's parental rights to be terminated so that Z.M.M. would have the opportunity to move forward with his foster parents through formal adoption. According to Hill, the foster parents and Z.M.M. are bonded; they provide Z.M.M. with a safe and stable home; they have demonstrated that they are able to take care of Z.M.M.; and Z.M.M. has lived with them since April 2017, which is longer than the total amount of time Father ever lived with Z.M.M. Hill also characterized Father's visits with Z.M.M. as "off and on," with only two visits in the last five months.

Father also testified at the hearing. Father admitted to knowing Z.M.M.'s mother was using drugs, but did not get involved because Z.M.M.'s mother and her current boyfriend made it difficult for him to see Z.M.M. Father also admitted to using marijuana within six months of trial. Further, Father testified that for a period of time he did not have a stable job or a place to stay and he was living with friends. According to Father, he had no relatives he could rely on for support. Father testified that he was currently working in a restaurant and was living with a friend. When asked at trial what he wanted to happen with Z.M.M. that day, Father replied he "would ask for an extension . . . just to get more goals where I want to be with my son." Father admitted that he did not have a stable home and would not be able to presently provide Z.M.M. with one.

## STANDARD OF REVIEW

A parent-child relationship may be terminated only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in section 161.001(b)(1) of the Family Code and that termination is in a child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

established." *Id.* § 101.007. We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002).

## PREDICATE FINDINGS

In his first issue, Father challenges the sufficiency of the evidence supporting the trial court's predicate findings under section 161.001(b)(1)(D), (N), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (N), (O). The trial court concluded under these subsections that there was clear and convincing evidence that Father: (1) had knowingly placed or knowingly allowed Z.M.M. to remain in conditions or surroundings which endanger his physical or emotional well-being, *see id.* § 161.001(b)(1)(D); (2) constructively abandoned Z.M.M., *see id.* § 161.001(b)(1)(N); and (3) failed to comply with the provisions of a court order specifically establishing the actions necessary for Father to obtain the return of Z.M.M., *see id.* § 161.001(b)(1)(O). Because termination under section 161.001(b)(1)(D) may have implications for a parent's parental rights to other children, the Texas Supreme Court has instructed that we must address issues raised on appeal challenging a trial court's finding under subsection D. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam); *In re Z.M.M.*, 577 S.W.3d at 543.

Predicate Finding Under Subsection D: Endangerment

Section 161.001(b)(1)(D) allows for termination of parental rights if, before the child was removed, the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (stating the relevant period). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-

ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury." *In re E.A.G.*, 373 S.W.3d 129, 141–42 (Tex. App.—San Antonio 2012, pet. denied) (citing *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009)). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re I.S.*, No. 04-18-00990-CV, 2019 WL 1459260, at *2 (Tex. App.—San Antonio Apr. 3, 2019, pet. denied) (mem. op.) (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109 (alteration in original) (citation omitted). Subsection D permits termination based upon only a single act or omission. *Id.*

"Under subsection D, the trial court examines evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being, although parental conduct can be a factor that contributes to this environment." *Id.* (citation and internal brackets omitted). "Evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that created an environment that endangered the well-being of the child." *In re I.S.*, 2019 WL 1459260, at *2 (internal brackets omitted) (quoting *In re S.R.*, 452 S.W.3d at 360–61). "Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that [a child's] surroundings endanger [the child's] physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)).

At trial, the Department's caseworker stated that she believed only subsection O provided a ground for termination. The Department's attorney stated at closing that the Department sought

termination pursuant to subsection E but did not argue how the evidence supported such a finding.[1]

The trial court remarked, when announcing its findings, that it "changed" the ground from subsection E to subsection D but did not explain its reasoning. On appeal, the Department does not argue in support of the trial court's finding pursuant to subsection D; instead, it asserts that termination is supported by the trial court's finding pursuant to subsection O and that a single predicate ground is sufficient.[2]

The record contains meager evidence related to subsection D. The Department's caseworker, Hill, testified that she and Father had a conversation about whether Z.M.M.'s mother was using drugs when the mother had possession of Z.M.M. Hill testified that Father told her that "he knew that [the mother] was using something, but she was keeping him away," so Father never acted to remove the child. Father testified:

> [The mother] didn't let me see the baby prior to [Z.M.M.'s removal], I mean, I would—due to her ex-boyfriends and whatever her situation was, I couldn't get near the child or do anything about her drug problem, because I didn't know what she was doing or what she was using at the time.

Father testified that he saw Z.M.M. about once or twice a month before the case started. He affirmed that those visits were difficult because of "the situation with [the mother] and her current boyfriend." Z.M.M. was born in January 2016, and the case began in March 2017. The trial court questioned Father as to his visits in January, February, and March 2017. Father testified that he had "short visits" with Z.M.M. in January and February 2017, at the mother's apartment, when he went to drop off supplies for the baby. Father was not questioned and did not provide specifics about his visits to Z.M.M. in 2016.

---

[1] Subsection E provides a predicate ground for termination where there is clear and convincing evidence that a parent engaged in conduct or knowingly placed a child with persons who engaged in conduct which endangers the physical or emotional well-being of a child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

[2] We invited additional briefing following remand, but the Department did not submit additional briefing related to subsection D.

We hold the Department did not prove by clear and convincing evidence that Father knowingly placed or knowingly allowed Z.M.M. to remain in conditions or surroundings which endangered his physical and emotional well-being. Subsection D required Father to have an awareness that Z.M.M. was in a potentially dangerous environment. *See In re R.S.-T.*, 522 S.W.3d at 109. However, the evidence at trial shows only that Father had a vague understanding of the mother's drug use. There is no evidence that Father knew the nature or extent of the mother's drug use, whether she used drugs in the home or around Z.M.M., and whether the mother's drug use impaired her ability to care for Z.M.M. There is no evidence that Father had knowledge of other concerns related to Z.M.M.'s conditions or surroundings before removal, and the evidence shows that Father was kept at a distance from the child when Z.M.M. resided with his mother. On this meager record, no reasonable factfinder could form a firm belief or conviction that Father knowingly placed or knowingly allowed Z.M.M. to remain in conditions or surroundings which endangered Z.M.M.'s physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Therefore, the evidence is legally insufficient to support the trial court's finding pursuant to Subsection D. *See In re J.F.C.*, 96 S.W.3d at 266.

Predicate Finding Under Subsection O: Failure to Complete Court-Ordered Requirements

Section 161.001(b)(1)(O) provides a ground for termination of a parent-child relationship upon proof, by clear and convincing evidence, that a parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). A court may not order termination under subsection O,

based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that: (1) the parent was unable to comply with specific provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

*Id.* § 161.001(d).[3]

Subsection O, as set forth above, has three requirements: (1) the parent's failure to comply with a court order; (2) the child was in the Department's care for at least nine months; and (3) the child was removed from the parent due to abuse or neglect. *Id.* § 161.001(b)(1)(O); *see In re E.F.*, No. 04-18-00635-CV, 2019 WL 2194539, at *2 (Tex. App.—San Antonio May 22, 2019, no pet.). The record establishes that Z.M.M. was in the Department's care, for over nine months, from March 2017 until the termination trial in February 2018, and that Z.M.M. was removed for abuse or neglect while he was in his mother's care. On appeal, Father challenges only the first requirement.

On May 15, 2017, the trial court ordered Father to comply with his family service plan. Father testified that he understood and signed the plan. Among other things, the plan required Father "to remain drug and alcohol free" and to "follow all recommendations of the [drug and alcohol] assessment including but not limited to inpatient drug treatment."

Father's asserts on appeal that the only court-ordered service he did not complete was outpatient drug treatment. He argues that he made a good faith effort to comply but was unable to comply, through no fault of his own, because he could not get off work. While it is true that the

---

[3] The Department argues that we should not consider the merits of section 161.001(d) because the section did not take effect until September 1, 2017, and does not apply to a suit affecting the parent-child relationship filed prior to that date. The Department's petition was filed on March 28, 2017. We assume, without deciding, that section 161.001(d) applies because the supreme court remanded this case to us for proceedings consistent with the supreme court's opinion and in that opinion the supreme court held "the court of appeals erred in failing to address the merits of section 161.001(d) as it relates to termination of the father's parental rights under section 161.001(b)(1)(O)." We note the Department made the same argument regarding the effective date of section 161.001(d) in its supreme court brief, but the argument went unaddressed in the supreme court's opinion.

caseworker testified that the only service Father failed to complete was outpatient drug treatment, Father's family service plan required more than Father's completion of services. The plan also required Father "to remain drug and alcohol free." The trial court ordered Father's compliance with the plan on May 15, 2017. At trial, which was held approximately nine months later on February 12, 2018, the trial court questioned Father: "When was the last time that you—that you used marijuana or any other illegal drugs . . . ?" Father replied: "About six months." The trial court sought clarification: "So, that takes you—that's already—August, September, somewhere in there, something like that?" Father responded: "Yes. Yes." When the trial court asked why father had not used drugs since then, Father responded: "I mean, I didn't have nowhere to get around. And, plus, I was, I guess you could say, homeless at the time." Father does not address this exchange in his appellate brief. Father raises no argument—and, accordingly, we do not conclude—that he proved by a preponderance of the evidence that he was unable to comply with the specific provision of the court-ordered family service plan that he "remain drug and alcohol free," or that he made a good faith effort to comply with this provision and was not at fault for failing to comply with this provision. *See* TEX. FAM. CODE ANN. § 161.001(d).

"A parent's failure to complete one requirement of [his] family service plan supports termination under subsection (O)." *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (internal citation and brackets omitted). Because Father's noncompliance with the court-ordered requirement that he remain drug free was unexcused, we need not address Father's arguments to excuse his noncompliance with the court-ordered requirement that he complete drug treatment. *See In re E.F.*, 2019 WL 2194539, at *4 (holding evidence of a mother's unexcused failure to remain drug free, as required by court order, was sufficient to support a subsection O finding, even if the mother's mental health condition could show her inability to comply with other court-ordered requirements); *In re N.W.L.T.*, No. 14-18-00497-CV, 2018 WL

6217313, at *8 (Tex. App.—Houston [14th Dist.] Nov. 29, 2018, pet. denied) (mem. op.) (holding finding under subsection O was supported by sufficient evidence because, even if a mother had proven a defense under section 161.001(d) with respect to her failure to complete substance abuse counseling, she did not attempt to invoke the defense with respect to her failure to remain alcohol-free during the case, as required by a court order).

Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that Father failed to comply with a court order that specifically established the actions he needed to take for Z.M.M. to be placed in his care. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). We overrule Father's first issue that the evidence is legally and factually insufficient to support a finding on a predicate ground for termination under section 161.001(b)(1).[4]

## BEST INTEREST OF THE CHILD

In his second issue, Father challenges the sufficiency of the evidence supporting the trial court's finding under section 161.001(b)(2) that termination of his parental rights was in Z.M.M.'s best interest. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a parent is willing and able to provide his or her child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See id.* § 263.307(b).

---

[4] We do not review the sufficiency of the evidence to support the subsection N finding because only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination and because due process and due course of law requirements do not demand our review of the subsection N finding. *See In re N.G.*, 577 S.W.3d at 237 n.1; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a strong conviction or belief that termination of the parent-child relationship is in the child's best interest. *Id.*

Evidence of a parent's drug use, inability to provide a stable home, and failure to comply with a family service plan supports a finding that termination is in the best interest of the child. *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Father admitted to using marijuana within six months of trial, and trial evidence established that Father was to be treated for mild marijuana addiction following a court-ordered drug assessment. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A parent's drug use supports a finding that termination is in the best interest of the child." (citation omitted)). The evidence also showed that Father failed to comply with his service plan when he failed to remain

drug free. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (holding a parent's drug use, inability to provide a stable home, and failure to comply with a service plan supports a finding that termination is in the best interest of the child). In addition, Father's own testimony called into question his ability to provide a stable home to Z.M.M. Father testified to being "nowhere [near] stable at all" for a period of time during the case and having no family support. He testified that he was currently employed and living with a friend; however, at trial, when asked if he thought he could be reunited with Z.M.M. that day, Father stated he was ready to be reunited, but that he would not presently be able to provide a stable home for Z.M.M. *See In re L.G.R.*, 498 S.W.3d at 205 ("A child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in a best-interest determination." (internal citation omitted)); *see also In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, no pet. h.) (mem. op.) (considering a parent's drug use and failure to obtain and maintain stable housing and employment as a factor in support of the trial court's finding that termination was in the best interest of the children because the parent's conduct subjected the children to a life of uncertainty and instability). The caseworker testified that Z.M.M. was doing well with his foster family, was bonded to the foster parents, and had lived with them longer than with Father. The caseworker also testified that the foster family met all of Z.M.M.'s needs and desired to formally adopt him. *See In re J.D.*, 436 S.W.3d at 120 ("The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest." (citation omitted)); *In re M.C.L.*, No. 04-17-00408-CV, 2017 WL 5759376, at *3 (Tex. App.—San Antonio Nov. 29, 2017, no pet.) ("When a child is unable to express his desires, a fact finder may consider that he has bonded with the foster family, is well cared for by them, and has spent minimal time with the

parent." (citation omitted)). Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination is in Z.M.M.'s best interest.

## CONCLUSION

We hold the evidence is legally insufficient to support the trial court's finding that termination of Father's parental rights was warranted under section 161.001(b)(1)(D) of the Family Code. However, we affirm the trial court's termination order because we hold the evidence is legally and factually sufficient to support the trial court's findings in support of termination under sections 161.001(b)(1)(O) and 161.001(b)(2) of the Family Code.

Rebeca C. Martinez, Justice