

# IN THE
# TENTH COURT OF APPEALS

## No. 10-20-00221-CV

## IN THE INTEREST OF J-R.A.M., A CHILD

**From the 77th District Court
Limestone County, Texas
Trial Court No. CPS-322-A**

## MEMORANDUM OPINION

Robert M. appeals from a judgment that terminated his parental rights to his child, J.-R.A.M. Robert complains that the trial court erred by granting the motion in intervention filed by the foster parents; erred by denying his motion to dismiss due to lack of jurisdiction; that the evidence was legally and factually insufficient for the trial court to have found by clear and convincing evidence that he committed the predicate acts in Section (b)(1)(E) and (O); and that the evidence was factually insufficient for the trial court to have found that termination was in the best interest of the child. Because we find no reversible error, we affirm the judgment of the trial court. We will address Robert's issues in the order which would grant the greatest relief.

## JURISDICTION

Because the resolution of Robert's second issue would result in the dismissal of this proceeding, which is the greatest relief sought, we will address that issue first. In his second issue, Robert complains that the trial court lacked subject matter jurisdiction to proceed to a final trial because the trial was not commenced prior to the written dismissal date and no extension had been made pursuant to the Texas Supreme Court's emergency orders regarding COVID-19. The initial dismissal date pursuant to Section 263.401(a) of the Family Code was February 10, 2020. Because of issues surrounding a delay in paternity testing, an extension was granted prior to that dismissal date for 180 days to August 8, 2020 in accordance with Section 263.40(b). The trial was set for a date in June and then in July of 2020 but was reset without objection by any party to commence on August 11, 2020 due to issues with conducting the trial in-person in a courtroom that was large enough to safely proceed with proper distancing protocols due to COVID-19. At the last permanency hearing in July of 2020 the trial court and the parties discussed what arrangements would need to be made at the trial which had been set on the earliest date that an adequate courtroom was available. However, no written order extending the trial court's jurisdiction beyond August 8, 2020 was signed.

On August 10, 2020, Robert filed a motion to dismiss this proceeding which asserted that the trial court had lost jurisdiction by failing to commence the trial prior to the written dismissal date of August 8, 2020. He raised this issue at the beginning of the

trial on August 11, 2020; however, the trial court determined that it had extended its jurisdiction due to the Supreme Court's emergency orders relating to COVID-19 and therefore had retained its jurisdiction to proceed. Robert argues that the trial court did not have jurisdiction over this proceeding after the 180-day dismissal date because no written order had been entered that set a new trial date and dismissal date as required by Section 263.401(b). On appeal, Robert further argues that would be a violation of his due process rights to not require that a new trial date and dismissal date be entered in an extension order, although he did not make this argument at trial.

Family Code Section 263.401(b) states:

(b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

(1) schedules the new date on which the suit will be automatically dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);
(2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and
(3) sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAM. CODE ANN. § 263.401(b).

In the Interest of J-R.A.M., a Child                                                    Page 3

Generally, these provisions are mandatory and the exclusive mechanism to extend a trial court's jurisdiction in a proceeding in which the Department has removed a child from his or her parents. However, during the current pandemic due to SARS-COVID-19, the Texas Supreme Court has issued two emergency orders relating to extensions in proceedings involving the Department of Family and Protective Services which are identical in their relevant provisions pursuant to Government Code Section 22.0035. *See* TEX. GOV'T CODE ANN. § 22.0035. The Eighteenth and Twenty-second Emergency Orders both state in relevant part:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
>
> a. except as provided in paragraph (b), modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than September 30, 2020;
> b. in all proceedings under Subtitle E, Title 5 of the Family Code:
> (i) extend the initial dismissal date as calculated under Section 263.401(a) only as provided by Section 263.401(b) or (b-1);
> (ii) for any case previously retained on the court's docket pursuant to Section 263.401(b) or (b-1), or for any case whose dismissal date was previously modified under an Emergency Order of this Court related to COVID-19, extend the dismissal for an additional period not to exceed 180 days from the date of this Order; …

*In re Eighteenth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9080, 2020 Tex. LEXIS 1007 (Tex. Jun. 29, 2020) (available at https://www.txcourts.gov/supreme/administrative-orders); *Twenty-Second Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9095, 2020 Tex. LEXIS

1021, (Tex. Aug. 6, 2020) (available at https://www.txcourts.gov/supreme/administrative-orders). Both of these orders were scheduled to expire on September 30, 2020 and all parties agree that the first one was in effect at the time of the final permanency hearing in July and second one was in effect at the time of the trial in August. *See id*.

The trial court had an involved discussion with the attorneys in this proceeding at the July hearing about the difficulties of finding a time where a courtroom with adequate space due to the limitations imposed due to COVID-19 in Limestone County was available because the trial court wanted to conduct the trial in person. The trial court and the attorneys also discussed potential witness appearances at that trial to be conducted on August 11-12, 2020.

Robert contends that a written order extending the proceedings was required in order for the trial court's jurisdiction to be extended pursuant to the Emergency Orders and that the order was required to contain the same elements as required by Family Code Section 263.401(b). The State contends that the requirements of Section 263.401(b) do not apply because the extension was not granted pursuant to that provision and that Robert was not denied due process by the failure to enter an order in accordance with Section 263.401(b).

While the emergency orders do expressly require compliance with Section 263.401(a) regarding an initial extension, they do not expressly require compliance with an extension granted after the initial extension. We find that the trial court extended the

jurisdiction of the trial court as it was required to do pursuant to the emergency orders ("all courts in Texas may … *and must* to avoid risk …) to a time when the trial court was able to safely conduct the hearing due to COVID-19. The failure to enter a written order or to specifically set a dismissal date did not affect the validity of the trial court's extension such as to deprive it of jurisdiction. An oral rendition of an extension is sufficient to comply with the Family Code. *See, e.g.*, TEX. FAM. CODE ANN. § 263.401(b) (trial court shall "render" an order); *see also In re C.L.B.*, No. 10-13-00203-CV, 2014 Tex. App. LEXIS 1924, at *25 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.). The emergency orders require that an extension be for no longer than a maximum of 180 days, which we find in the absence of Robert's objection to the contrary to the trial court, satisfies his due process rights. And certainly a delay of three days beyond the dismissal deadline is not such a significant delay as to deny him his right to due process pursuant to the emergency orders. We find that the trial court did extend its jurisdiction pursuant to the emergency orders. We overrule issue two.

### SUFFICIENCY OF THE EVIDENCE

In his third issue, Robert complains that the evidence was legally and factually insufficient for the trial court to have found that he committed the predicate acts set forth in Section (b)(1)(E) and (O) of the Family Code. In his fourth issue, Robert complains that the evidence was factually insufficient for the trial court to have found that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2).

STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in termination cases are well established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

Because we are required to consider the sufficiency of the evidence pursuant to Section 161.001(b)(1)(E) if challenged, we will address that ground first. *In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019). If the evidence is sufficient as to that ground, it will not be necessary to address the other predicate ground because sufficient evidence as to only

one ground in addition to the best interest finding is necessary to affirm a termination judgment. *Id.* at 232-33.

## SECTION 161.001(B)(1)(E)

Robert argues that the evidence is legally and factually insufficient to support the trial court's finding that he engaged in conduct or knowingly placed J.-R.A.M. with persons who engaged in conduct that endangered the physical or emotional well-being of J.-R.A.M. TEX. FAM. CODE ANN. §161.001(b)(1)(E). Section 161.001(b)(1)(E) requires a finding of endangerment either by the parent or by persons with whom the parent knowingly placed the child. To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533.

Under subsection 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In the Interest of E.M.*, 494 S.W.3d 209, 221 (Tex. App.—Waco 2015, pet. den'd). Under subsection (E) it can be either the parent's conduct or the conduct of person with whom the parent knowingly leaves the child that endangers the physical or emotional well-being of the child. In either instance it is thus the direct result of the parent's conduct that results in the termination

of the parental rights. It is not necessary, however, that the conduct be directed at the child or that the child actually suffer injury. *In the Interest of E.M.*, 494 S.W.3d at 222.

When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Evidence of illegal drug use by a parent and its effect on a parent's life and his ability to parent may establish an endangering course of conduct. *Id.* A parent's continuing drug-related conduct can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *Id.* A parent's drug use exposes the child to the possibility the parent may be impaired or imprisoned and, thus, unable to take care of the child. *Walker v. Texas Dep't of Family & Protective Services.*, 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment. *Texas Department of Human Services v. Boyd*, 727 S.W.2d at 533. Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. den'd).

Robert began using marijuana around the age of nine, and his drug use continued throughout his life. He experimented with cocaine at one point as a young teenager, and later with hydrocodone and Xanax. He was convicted of possession with the intent to

distribute drugs and several other offenses throughout his lifetime beginning in 2003 and had been to prison twice prior to J.-R.A.M.'s birth.

When Kayla, J.-R.A.M.'s mother, got pregnant with J.-R.A.M. in 2016, Robert and Kayla were living with his parents. Robert's parents smoked marijuana continually in their house. Robert and Kayla were both methamphetamine users before they became involved romantically and they did methamphetamines together afterward, although they alleged that she stopped when she knew she was pregnant in July of 2016. Robert was a regular marijuana user as well. Robert began selling drugs again during Kayla's pregnancy because they were having financial problems.

In September of 2016, Kayla moved to South Carolina to live with her mother and step-father to get her out of the house with the marijuana use. Robert remained in Texas. In January of 2017, Robert's parents' home was searched pursuant to a warrant and drugs and drug paraphernalia, packaging commonly used in the sale of drugs, two firearms, and currency were found in Robert's room. Robert was not legally allowed to be in possession of a firearm due to his status as a felon. He was arrested for the drug offenses and released after posting bail.

After his release in January of 2017, Robert went to South Carolina before J.-R.A.M.'s birth in late February of 2017 until a few weeks after his birth when Robert was arrested on a federal warrant for the unlawful firearm possession stemming from the search of his parents' home. He was taken into federal custody and was convicted and

sentenced to 41 months in prison and 36 months of supervised release for possession of the firearms. The drug charges were dismissed by the State because he was already convicted of and incarcerated for the federal conviction on the firearms offense.

Kayla moved back to Texas in 2018 and started using methamphetamines again, which ultimately resulted in J.-R.A.M.'s removal in February of 2019, when J.-R.A.M. was two years old. Robert was still in federal prison in Beaumont at this time and was informed of the removal shortly after it occurred when he was served with the petition and supporting documents. Robert was released from incarceration and sent to a halfway house for six months in October of 2019 and was released on house arrest early in 2020. After his release, he had not tested positive for drugs again prior to the trial.

Robert had been incarcerated for almost the entirety of J.-R.A.M.'s life prior to his release. This conviction was the latest in a long history of incarcerations and criminal behavior, and was based on a serious offense committed when Robert knew that Kayla was pregnant with his child. Robert admitted that a subsequent conviction would likely result in life imprisonment. Robert acknowledged his heavy drug use prior to his last incarceration, beginning with marijuana use at the age of 9. Robert's drug use and criminal activity subject J.-R.A.M. to a life of uncertainty and instability and show a course of conduct that endangers J.-R.A.M. Although Robert had shown a short time of improvement after his release from prison, the trial court was allowed to disbelieve that it would continue based on his long history of drug use and criminal behavior.

We find that the evidence is legally and factually sufficient to support the trial court's findings that Robert engaged in conduct that endangered the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). We do not need to address whether Robert placed the child with a person or persons who engaged in conduct that endangered the child because of this finding. Also, because only one predicate act under Section 161.001(b)(1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest, we do not consider the part of Robert's issue that complains of the trial court's finding pursuant to Section 161.001(b)(1)(O). *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule issue three.

**BEST INTEREST**

In his fourth issue, Robert also complains that the evidence was factually insufficient for the trial court to have found that termination was in the best interest of the child. In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent in the best interest determination. *Id.* There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is

in the child's best interest.  *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  Evidence establishing one of the predicate grounds under Section 161.001(b)(1) also may be relevant to determining the best interest of the child.  *See C.H.*, 89 S.W.3d at 27-28.

J.-R.A.M. was three years old at the time of the trial.  Other than the first few weeks of his life and one time when Kayla visited Robert with J.-R.A.M. at the prison where Robert was incarcerated, Robert had visited with the child once, which occurred during the pendency of the proceedings after a hearing in December of 2019.  There was no bond between J.-R.A.M. and Robert, whereas J.-R.A.M. was very bonded with the family where he had been placed who had been foster parents of and had adopted his two half-brothers.[1]  The parents were no longer licensed to be foster parents after adopting J.-R.A.M.'s half-brothers but agreed to accept placement and got reapproved as foster parents during these proceedings for J.-R.A.M.  The foster parents wanted to adopt J.-R.A.M.  They also maintained an ongoing relationship between J.-R.A.M.'s half-brothers and half-sister.

The foster parents had met all of J.-R.A.M.'s physical and emotional needs, which were significant.  When he arrived at the placement, J.-R.A.M. was developmentally delayed, angry, and aggressive.  At his first doctor visit which took place shortly after his placement, he tested positive for methamphetamines.  He required speech and behavioral

---

[1] Before J.-R.A.M.'s birth, Kayla had three other children with different fathers.  Her rights were terminated as to each of those children previously.  The two boys were placed with and adopted by the foster family with whom J.-R.A.M. was placed, and the girl was placed with a relative of her father.

therapy, all of which the foster parents arranged and ensured that J.-R.A.M. received. Over the approximately seventeen months J.-R.A.M. had lived with the foster parents, he had improved tremendously in all areas. He had shown signs of trauma when he first was evaluated after being placed in the home, but due to the stability and relationships he had developed with the foster parents and his siblings, he had improved tremendously. The foster mother and the CASA worker testified that to remove him to place him with his father who was a stranger would cause further significant trauma to J.-R.A.M.

Robert was aware that J.-R.A.M. had special needs but did not know specifics and had made no plans for how to deal with those needs if J.-R.A.M. was placed with him and his current wife who he had met through corresponding in prison and married while living at the halfway house. Robert intended for his wife to deal with whatever issues there were. Robert had maintained steady employment since January of 2020 and was living in a house which was in his current wife and her father's names.

Robert had completed the majority of his service plan but had attended only two counseling sessions and had not engaged in a 12-step program after his course of drug treatment. He was diagnosed with Antisocial Personality Disorder in his psychological evaluation, and the evaluating psychologist opined that he would be unable to effectively parent a child due to his disorder. The psychologist also testified that Robert's improvements after his latest release from incarceration were likely because he was under

close supervision because of his supervised release from the federal prison system and the Department, and that he would very likely relapse in the absence of close supervision.

Using the appropriate standards of review, we find the evidence was factually sufficient for the trial court to have found that termination was in the best interest of J.-R.A.M. We overrule issue four.

### STANDING OF INTERVENORS

In his first issue, Robert complains that the trial court erred by determining that the foster parents had standing to intervene in the proceeding. The Department of Family and Protective Services argues that this issue is moot because the trial court denied the intervenor's request to be named the managing conservators of the child and the intervenors did not appeal that denial.

A case or issue is moot when either no live controversy exists between the parties or the parties have no legally cognizable interest in the outcome of that case or issue. *City of Krum, Tex. v. Rice*, 543 S.W.3d 747, 749 (Tex. 2017) (per curiam). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). "A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). In this proceeding, we liken the petition in intervention to a "case" that has ceased to exist after the trial court's denial of the requested relief and the failure

to appeal that denial.  Thus, we agree with the Department that this issue is moot. We overrule issue one.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed December 30, 2020
[CV06]

